IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TYRONE HILL,                       :
                                   :
         Plaintiff                 :
                                   :
    v.                             :       CIVIL NO. 3:CV-11-1034
                                   :
JON D. FISHER, ET AL.,             :       (Judge Conaboy)
                                   :
         Defendants                :

## MEMORANDUM
### Background

Tyrone Hill (Plaintiff), an inmate presently confined at the Smithfield State Correctional Institution, Huntingdon, Pennsylvania (SCI-Smithfield) initiated this pro se civil rights action. Hill subsequently submitted an Amended Complaint (Doc. 6). The Remaining Defendant is Lieutenant John Rivello of SCI-Smithfield.

By Memorandum and Order dated September 27, 2013, Defendants' motion for summary judgment was partially granted. See Doc. 68. Specifically, the request for summary judgment was granted in favor of the Defendants on the basis of non-exhaustion of administrative remedies with respect to the following claims: (1) the purported taking of Plaintiff's legal materials during April, 2010; (2) alleged confiscation of pens during a September 1, 2010 cell search; (3) the loss of two copies of a legal publication belonging to Hill from the prison's property room on March 13, 2011; and (4) an alleged loss of mail on May 17, 2011.

1

Summary judgment was also granted in favor of Defendants with respect to: (1) all claims against Superintendent Fisher and Deputy Superintendent Hannah; (2) the denial of due process allegations against Hearing Examiner Kuhn; and (3) Hill's factually unsupported assertions of conspiracy. Furthermore, Defendants' request for qualified immunity was granted in regards to Hill's claim that Defendant Eichenlaub improperly placed him in administrative custody on April 9, 2010.

However, the motion for summary judgment was denied with respect to the claims that: (1) Defendant Rivello failed to protect Plaintiff's safety by deliberately placing him in an recreation cage adjoining one occupied by by Inmate Smith a prisoner with a propensity for attacking other inmates who was on single yard and spit hood restrictions, and by refusing to personally intervene or permit other correctional staff to do so during an assault on Hill by Inmate Smith; and (2) a November 5, 2010 cell search resulted in confiscation of some of Plaintiff's personal legal materials by Correctional Officer Kauffman and that a grievance filed by Plaintiff regarding that seizure was inadequately investigated by Defendant Booher.

By Order dated September 19, 2014, Defendants' motion seeking partial reconsideration of the September 27, 2013 Memorandum and Order was granted. See Doc. 82. Summary judgment was granted in favor of Defendants Kaufmann and Booher with respect to the claims that: (1) a November 5, 2010 cell search resulted in confiscation of some of Plaintiff's personal legal materials by Correctional Officer Kauffman and (2) a grievance filed by

Plaintiff regarding that seizure was inadequately investigated by Defendant Booher.

However, the motion for reconsideration was denied with respect the above described claims that Defendant Rivello failed to protect Plaintiff's safety. Presently pending is the Remaining Defendant's motion for summary judgment. <u>See</u> Doc. 87. The opposed motion is ripe for consideration.

## Discussion

The Remaining Defendant claims entitlement to entry of summary judgment on the grounds that: (1) the undisputed facts show that Rivello had no actual knowledge that Smith posed a substantial threat of throwing urine and feces at the Plaintiff; (2) he acted reasonably in responding to Smith's assault on Hill; and (3) Rivello is entitled to qualified immunity. <u>See</u> Doc. 94, p. 3.

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>See</u> <u>also</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. <u>Id</u>. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of

the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Failure to Protect**

According to the Amended Complaint, on July 12, 2010 Plaintiff was housed in the prison's Restricted Housing Unit (RHU). The RHU is described by Hill as being under the direct supervision

4

of Defendant Rivello. See id. at ¶ 13. On said date, Plaintiff states that after signing up for morning exercise he watched Rivello and another correctional officer escort Inmate Devon Smith, a prisoner with a known history of assaultive behavior, to a recreation cage. During this escort, Smith was purportedly wearing a spit hood and was tethered. See id. Inmate Smith is also described as having past history of placement on single yard restriction[1] and having been sanctioned to wear a spit hood.[2] After Smith was placed in the outdoor recreation, the spit hood and tether were removed.

Rivello then allegedly directed a correctional officer to put Plaintiff in the recreation cage next to the one occupied by Inmate Smith. See id. at ¶ 18. Although Plaintiff told the escorting officer that he did not wish to be placed in a recreation cage next to Smith, his request was ignored. Smith proceeded to defecate in the cage and strike the Plaintiff with globs of urine, saliva, and feces. Inmate Smith also attempted to spit on another prisoner in a separate adjoining recreation cage.

Rivello's initial summary judgment argument generally maintains that "Plaintiff cannot show theat Rivello possessed actual knowledge that Smith had a propensity of violence towards Plaintiff, or towards other inmates while in yard." Doc. 94, p. 7. The Remaining Defendant adds that Inmate Smith had no history of

---

1. Single yard restriction means that the inmate goes to the exercise yard alone.

2. The wearing of a spit hood prevents an inmate from spitting on prison staff and other inmates.

throwing or threatening to throw bodily waste at other prisoners. Furthermore, since Smith was not subject to any exercise restrictions when Hill was assaulted the decision by Rivello to place Plaintiff in a recreation cage next to Hill does not support a failure to protect claim.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). Under Farmer, an inmate must surmount the high hurdle of showing that a prison official actually knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk. Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

According to the Amended Complaint and Plaintiff's deposition testimony, it was well known and documented that Inmate Smith had a history of spitting and throwing feces/urine on other prisoners. The Remaining Defendant acknowledges that Inmate Smith previously received three misconducts while housed at the Montgomery County, Pennsylvania Correctional Facility for throwing fecal matter on the walls of his cell; throwing feces from his cell into the day room; and for defecating and urinating in a cup and shaking it at staff in a menacing manner. See Doc. 94, p. 8.

In addition, the Remaining Defendant admits that while confined at SCI-Smithfield Smith received two misconducts for spitting and threatening to spit at staff members as well as covering his cell camera with feces. Rivello assert that although those actions could support a determination that Smith had a propensity to smear feces in his cell and assault staff "they in no way indicate that Smith would treat his fellow inmates in the same manner." Id. at p. 9.

It is undisputed that Plaintiff was given a misconduct for throwing feces from his cell into the dayroom which would contain other prisoners at a former place of confinement. Second, in the days leading up to the assault on the Plaintiff, Smith received earlier misconducts for: covering cell camera with feces (July 1, 2010); threatening to spit on an officer (July 3, 2010); flooding his housing unit (July 3, 2010); covering up his cell camera (July 6, 2010); and attempting to spit on an officer (July 6, 2010); See Doc. 89-3, Attachment C.

Although the Remaining Defendant has come forward with supporting evidence showing that Inmate Smith had no restrictions on exercise as of July 12, 2010. The undisputed record supports Plaintiff's assertion that it was well known that Smith had a propensity for spitting and throwing feces/urine and was arguably in the midst of a period of disturbing behavior. The Remaining Defendant also does not dispute that on the date of assault, Smith was escorted to the recreation cage in a spit hood while tethered.

Based upon those considerations, there are clearly facts in dispute as to whether Rivello possessed actual knowledge that Smith

posed a threat to Plaintiff or any other prisoner who would be placed in an adjoining recreation cage.[3] This Court does not agree with the Remaining Defendant's assessment that Smith's prior actions could not support a determination that Smith could attack his fellow inmates with feces. Accordingly, Lieutnenat Rivello's request for summary judgment will be denied with respect to the claim that the Remaining Defendant failed to protect Plaintiff's safety by deliberately placing him at risk for an attack by Inmate Smith.

**Failure to Intervene**

The Amended Complaint also asserts that Lieutenant Rivello, despite having a sufficient number of correctional staff in the vicinity as well as access to appropriate security equipment, failed to timely intervene when Smith began assaulting Plaintiff.

Rivello seeks entry of summary judgment with respect to this claim on the grounds he followed Department of Corrections (DOC) policy in responding to the incident. The Remaining Defendant states in a supporting declaration under penalty of perjury that he first attempted to control the situation by issuing Smith a verbal order to cease.

When that effort proved unsuccessful, the Remaining Defendant briefed his shift commander Captain Sunderland, as required under DOC policy. Sunderland ordered Rivello to assemble a compliance team. While the compliance team was being briefed by

---

3. For instance while Smith mnay not have been on a spit hood restriction, Rivello does not dispute that the inmate was brought to the recreation cage in a spit hood.

8

Rivello, he was notified that Smith was now attempting suicide by hanging himself with his jumpsuit from the fence of the recreation cage. Rivello promptly ended the briefing and the compliance team immediately responded to the suicide attempt and secured Smith. Once Inmate Smith was controlled, Plaintiff was taken from the yard, examined by a nurse, given clean clothes and a shower. Rivello estimates that from the time Inmate Smith began throwing feces to the point that the compliance team responded, a period of ten to fifteen minutes elapsed.

A prison official who witnesses a prisoner being physically assaulted by another corrections officer but who fails to take any steps to protect the prisoner violates the Eighth Amendment. Smith, 2002 WL_1283688 at *7-8; Estate of Davis v. Delo, 115 F.3d 1388, 1395-96 (8th Cir. 1997); Gaudreault v. Salem, 923 F.2d 203, 207 n. 3 (1st Cir.), cert. denied, 500 U.S. 956 (1990) ("an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable . . . ."); O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) ("a law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."); Laury v. Greenfield, 87 F. Supp.2d 1210, 1216 (D. Kan. 2000); Ruble v. King, 911 F. Supp. 1544, 1555-56 (N.D. Ga. 1995).

Based upon undisputed evidence submitted by the Remaining Defendant, this was not a case where Lieutenant Rivello just stood by and watched an assault and refused to personally intervene or permit other correctional staff to do so. On the contrary, when

Plaintiff was being attacked by Inmate Smith undisputed evidence shows that Rivello timely responded in the manner required under controlling DOC regulations. Accordingly, the request for entry of summary judgment will be granted in favor Lieutenant Rivello with respect to the failure to intervene claim.

**Qualified Immunity**

The Remaining Defendant also argues that he is entitled to qualified immunity because there was no violation of Plaintiff's constitutional rights and even in the event that this Court found a violation "it is not clear that a reasonable corrections officer would understand that his actions violated any constitutional rights." Doc. 94, p. 14.

Qualified immunity is an affirmative defense which must be pleaded by the defendant official. Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995). In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997). It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9

10

(3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), subsequently established a two part test for analyzing qualified immunity claims. See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136. The second prong requires a determination as to whether the constitutional right at issue was clearly established. If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity. Courts have the discretion in deciding which of the two prongs should be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

With respect to the first prong of Saucier this Court has already concluded that viewing the facts in a light most favorable to the Plaintiff, it could be determined that the failure to intervene claim does not allege a constitutional violation which is sufficient to survive the pending summary judgment motion. Accordingly, Remaining Defendant's pending argument that there was clearly no violation of Hill's constitutional rights is meritiorious with respect to that allegation. However, since this Court has also decided that the failure to protect claim should

proceed, the argument that said claim does not adequately allege a constitutional violation lacks merit.

In regards to the second prong of Saucier, "a right is clearly established if it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." Jones v. City of Jersey City, 2002 WL 1877036 *1 (3d Cir. 2002). Courts considering a request for qualified immunity must ask if a reasonable officer would have understood that his actions were prohibited. Bennett, 274 F.3d at 136. Under the standards developed in Jones and Bennett, it must be shown that the correctional official knew the constitutional right existed, ignored the right, and deliberately acted in violation of that right.

First, assuming that the failure to intervene claim did adequately raise a claim of constitutional misconduct, since Rivello's actions were timely taken and in accordance with DOC policy, this Court agrees that any reasonable correctional official would not have understood that his actions were unlawful. Thus, assuming arguendo that the failure to intervene was unconstitutional, the Remaining Defendant would be entitled to qualified immunity

Second, any reasonable correctional staff member would have understood that the failure to protect Plaintiff's safety alleged by the Amended Complaint, if proven, could constitute a violation of the prisoner's clearly established constitutional rights. Furthermore, as discussed earlier the undisputed facts presented to this court could support a finding that such a constitutional

12

violation occurred. For the same reasons outlined, a finding of qualified immunity in regards to the claim that Plaintiff was placed in harm's way due to deliberate indifference by Lieutenant Rivello is not warranted.

In conclusion, the Remaining Defendant's motion (Doc. 87) seeking summary judgment will be granted in part. Summary judgment will be granted with respect to the failure to intervene claim but denied in regards to the failure to protect allegation. An appropriate Order will enter.

                                                */s/ Richard P. Conaboy*
                                            RICHARD P. CONABOY
                                            United States District Judge

DATED: MARCH 7th, 2016