IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYRONE HILL, | No. 3:11-cv-01034 |
| Plaintiff, | (Judge Mariani) |
| v. | |
| JON D. FISHER, et al., | |
| Defendants. | |

**MEMORANDUM**

September 25, 2019

## I. Introduction

Tyrone Hill, a Pennsylvania state prisoner, filed this civil rights complaint in 2011 alleging that numerous individuals violated his constitutional rights. (Docs. 1, 6). After Hill filed this complaint, the matter proceeded in due course and, in January 2017, was referred to Mediator Joseph A. Barrett for mediation. (Doc. 111). Shortly thereafter, the parties reached a settlement agreement ("Agreement") and the case was closed. (Docs. 116, 117).

Nevertheless, the parties disagreed on the implementation of the Agreement and, in August 2017, Hill filed a motion to enforce the Agreement. (Doc. 120). The matter was therefore referred back to Barrett to determine whether the parties could reach an amicable

resolution to the dispute.[1] (Doc. 125). To protect the confidentiality of the negotiations, the Court entered an order on December 2, 2018, directing prison officials at State Correctional Institution Huntingdon ("SCI Huntingdon") "to refrain from photocopying or otherwise recording direct communications between Plaintiff and the court appointed mediator" ("Order").[2] (Doc. 130).

Despite this Order, on December 15, 2018, a letter from Barrett to Hill was opened and photocopied by two prison guards—identified by Defendants as Donald Lowe and Jason Kyler. (Docs. 132, 133, 137). As a consequence of this violation of the Order, Hill requested that the Court impose monetary sanctions against Lowe, Kyler,[3] and SCI Huntingdon Superintendent Kevin Kauffman (collectively "Motion Defendants")[4] for civil contempt. (Doc. 132). Motion Defendants acknowledged that mail from Barrett was photocopied, but opposed the motion on the ground that there was no evidence of bad faith on the part of Lowe and Kyler. (Doc. 133). Finding the response deficient, the Court directed Motion Defendants to

---

[1] Barrett recently reported that the parties "were not able to reach an amicable settlement of plaintiff's motion to consummate settlement." (Doc. 145).

[2] Such an order was necessary because, in late 2018, Pennsylvania state prisons had a policy of opening, inspecting, and photocopying all mail in the presence of the prisoner to whom the mail was addressed. (See Doc. 137 at Ex. 4).

[3] Hill did not name Lowe and Kyler in his motion, but instead requested sanctions against "the two [unnamed] staff" who photocopied the mail. (Doc. 132 at 5). Defendants subsequently identified those staff members as Lowe and Kyler. (Doc. 137 at 5).

[4] Lowe, Kyler, and Kauffman are not Defendants in the underlying civil suit and have a stake only in the outcome of the motion for contempt. The Court therefore refers to the three individuals simply as Motion Defendants. Although Motion Defendants are not parties to the underlying litigation, as discussed below, they may nevertheless be held in civil contempt.

file a more responsive brief that included sworn affidavits to support any factual assertions. (Doc. 136).

Motion Defendants duly complied and again asserted that sanctions should be denied because, although Lowe and Kyler violated the Order, they did not act in bad faith. (Doc. 137). Specifically, Lowe and Kyler asserted that they had no knowledge of the Order on December 15, 2018, when they opened the letter from Barrett. (*Id.* at 5-6; *see id.* at Exs. 2, 3). Moreover, Motion Defendants contended that "no one at SCI-Huntingdon knew of, or had seen the Order on December 15, 2018," and the Superintendent's office had no record of having received the Order. (*Id.* at 6; *see id.* at Ex. 1). Rather, according to Motion Defendants, Lowe and Kyler opened the letter in reliance on the then-extant Pennsylvania Depart of Corrections ("PA DOC") policy that mandated prison officials open, inspect, and photocopy all incoming prisoner mail. (Doc. 137 at 3, 5; *id.* at Ex. 4).

Hill filed a reply brief in which he asserted that—contrary to any assertion that Lowe and Kyler had no knowledge of the Order—he personally informed both officers that the Order prohibited them from opening Barrett's letter. (Doc. 139 at 2). Hill further claimed that, on March 5, 2019, correctional officers again opened and photocopied a letter from Barrett to Hill. (*Id.* at 3). The resolution of Hill's motion thus appeared to rely on unresolved factual issues—including questions of credibility—that necessitated an evidentiary hearing, which was held on September 19, 2019.

At that hearing, this Court heard from SCI Huntingdon Administrative Officer Andrea Wakefield, SCI Huntingdon Security Captain Kevin Stevens, Lowe, Kauffman, and Hill. Wakefield testified that all mail addressed to the Superintendent of SCI Huntingdon is reviewed by the Superintendent's Assistant and that, between December 1, 2018, and January 31, 2019, she acted as the Superintendent's Assistant. (Evidentiary Hearing Tr. at 6-7). Wakefield further stated that institutional records do not show that SCI Huntingdon received the Order. (*Id.* at 7-9).

Stevens testified that he oversees the department that searches incoming mail and that, in December 2018, Pennsylvania state prison regulations provided that incoming privileged mail must be opened and photocopied in front of the inmate to whom it was addressed. (*Id.* at 10-11). Stevens was notified of the Order for the first time on February 19, 2019, and immediately directed Lieutenant Caleb Younker to inform "all mailroom personnel, as well as all search team members" not to photocopy any mail from Barrett to Hill. (*Id.* at 11-12). Younker then sent an email to most relevant staff members informing them of the directive; for an unknown reason, Lowe was not copied on that email. (*See id.* at 12; Evidentiary Hearing Def. Ex. 2). Lowe testified that he was not informed of the Order until May 2019 and, thus, photocopied Hill's mail in March 2019. (Evidentiary Hearing Tr. at 22-23). Upon consideration of the parties' briefs, affidavits, and testimony, and for the reasons set forth below, the Court will grant Hill's motion for sanctions.

4

## II. Discussion

In his motion for civil contempt, Hill requests monetary sanctions for the admitted breach of the Order. (Doc. 132). As discussed previously, Motion Defendants assert that sanctions are not warranted because staff at SCI Huntingdon were not aware of the Order when they photocopied Hill's mail. (Doc. 137). Based upon the submissions to the Court and testimony at the evidentiary hearing, there appear to be three relevant events that bear upon the motion for contempt: (1) the December 15, 2018, photocopying of a letter from Barrett to Hill ("December 15 Incident"); (2) the March 5, 2019, photocopying of a letter from Barrett to Hill ("March 5 Incident"); and (3) the photocopying of mail from Barrett to Hill on March 19, 2019 ("March 19 Incident").

"Proof of contempt requires a movant to demonstrate (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (internal quotation marks omitted). "These elements must be proven by 'clear and convincing' evidence, and ambiguities must be resolved in favor of the party charged with contempt." *Id.* (internal quotation marks omitted). "Although courts should hesitate to adjudge a defendant in contempt when there is ground to doubt the wrongfulness of the conduct, an alleged contemnor's behavior need not be willful in order to contravene the applicable decree." *Id.* (internal citations and quotation marks omitted). "In other words, good faith is not a defense

to civil contempt." *Id.* (internal quotation marks omitted).[5] Upon finding an individual in civil contempt, courts may impose a broad variety of sanctions depending upon the circumstances of the case and may sanction a nonparty if he or she "abet[s] the defendants or [is] legally identified with him." *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 973 (3d Cir. 1982) (ellipsis omitted).

It is undisputed that there is a valid court order that prohibited "prison officials . . . [from] photocopying or otherwise recording direct communications between Plaintiff and the court appointed mediator." (Doc. 130 at 2). Moreover, Motion Defendants concede that—in two instances—prison officials photocopied mail from Barrett to Hill, thereby establishing that the Order was disobeyed.[6] (Doc. 137-2; Doc. 137-3; Evidentiary Hearing Tr. at 13-15, 22-24). Therefore, the only dispute is whether prison officials had knowledge of the Order at the time they violated it.

---

[5] Defendants' defense is largely built upon the notion that a finding of bad faith is necessary to impose sanctions. (*See* Doc. 137). It is true that a Court generally must find bad faith before it may rely upon its inherent powers to sanction a party. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49-50 (1991). However, Hill requests "sanctions for civil contempt" (Doc. 132 at 1), and the United States Court of Appeals for the Third Circuit has repeatedly stated that a court should not rely upon its inherent authority where other grounds exist to sanction a party. *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 577 n.4 (3d Cir. 2018). Because Hill's motion asks for a finding of contempt, bad faith is not a prerequisite for the imposition of sanctions.

[6] There is no concession from Defendants regarding the March 5 Incident. Nevertheless, Hill's uncontroverted testimony establishes that mail from Barrett to Hill was photocopied on March 5, 2019. (Evidentiary Hearing Tr. at 31-33).

### A. December 15 Incident

The first event relevant to the pending motion for sanctions is the December 15 Incident. Motion Defendants concede that Lowe and Kyler photocopied Hill's mail but assert that no one at SCI Huntingdon had any knowledge of the Order in December 2018. Wakefield provided a sworn affidavit attesting that any court orders are processed through SCI Huntingdon by the Superintendent's Assistant and that, from December 1, 2018, until January 31, 2019, the Superintendent's Assistant was out of the office, leaving Wakefield temporarily responsible for processing all court orders. (Doc. 137-1). Wakefield stated in her affidavit and during the evidentiary hearing that she does not recall ever having received the Order, and that institutional records do not show that SCI Huntingdon received the Order. (*See id.*; Evidentiary Hearing Tr. at 7-9). Lowe and Kyler both assert that they were unaware of the Order when they photocopied Barrett's letter on December 15, 2018. (Doc. 137-2; Doc. 137-3; Evidentiary Hearing Tr. at 22-24).

Although the Court is concerned with the explanation provided by Motion Defendants, after resolving any ambiguities in their favor, the Court cannot conclude that clear and convincing evidence supports a determination that staff at SCI Huntingdon knew of the Order when Hill's mail was photocopied on December 15, 2018. This conclusion is necessitated by two facts. First, the Superintendent's Assistant was on leave for approximately two months, and her absence may have resulted in some mail being misplaced or overlooked. Second, the testimony from prison officials uniformly denies that anyone at SCI Huntingdon received

7

the Order prior to February 19, 2019, and it is not implausible that the Order was lost in the mail system. Collectively, this undermines the notion that staff at SCI Huntingdon "had knowledge of the order" such that Motion Defendants may be held in contempt for the December 15 Incident. *Lane Labs-USA, Inc.*, 624 F.3d at 582.

### B. March 2019 Incidents

In contrast to the December 15 Incident, the record supports the imposition of sanctions for two events that occurred in March 2019. First, Hill asserts that, on March 5, 2019, prison officials "photocopied and recorded" a letter from Barrett to Hill. (Doc. 139 at 3; Evidentiary Hearing Tr. at 31-33).[7] Second, at the evidentiary hearing it was revealed that mail from Barrett to Hill was photocopied by Lowe on March 19, 2019. (Evidentiary Hearing Tr. at 13-14, 22-24).

It is uncontested that, by March 2019, prison officials were aware of the Order. Specifically, Defense Counsel emailed prison officials on February 19, 2019, to notify them of the Order, and prison officials thereafter sent an internal email to spread awareness of the Order among prison staff. (*Id.* at 11-12, 36-37; Evidentiary Hearing Def. Ex. 2). Despite this, Motion Defendants contend that Lowe was never informed of the Order because he was left

---

[7] The Court notes that Hill's allegations regarding the March 5, 2019, email were initially set forth in his reply brief in this motion and, although those allegations were purportedly made pursuant to 28 U.S.C. § 1746, they were not made under penalty of perjury. (Doc. 139 at 3). Because that assertion was not made under penalty of perjury, the Court does not rely on such assertion as fact, *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315 (3d Cir. 2019), and references the reply brief for background information only.

8

off the internal email that directed officials to refrain from photocopying mail from Barrett to Hill. (Evidentiary Hearing Tr. at 11-12). Because Lowe was unaware of the Order, he continued to photocopy mail from Barrett to Hill. (*Id.* at 22-23).

The Court finds this explanation insufficient to avoid a finding of contempt. First, Motion Defendants do not explain who opened and photocopied Barrett's mail on March 5, 2019, or why photocopying was done despite general knowledge of the Order among SCI Huntingdon staff. The letter was clearly marked as originating from "ADR Coordinator Joseph A. Barrett, Esq.," and was addressed to Hill. (Doc. 139 at 11). In the absence of any reasonable explanation for why that mail was photocopied or whether prison officials were somehow unaware of the Order, a finding of contempt is required for the March 5 Incident.

Moreover, even if the March 5, 2019, photocopying was done by Lowe—and assuming that Lowe was indeed not aware of the Order—sanctions would still be warranted. In that regard, there are two troubling issues with the defense presented to Hill's motion. First, the defense hinges entirely upon the contention that Lowe was unaware of the Order because Younker neglected to copy Lowe on the email that advised prison officials of the Order. Despite the centrality of this fact to the defense, Motion Defendants failed to produce Younker at the evidentiary hearing to testify as to how or why Lowe was excluded from the email list. The absence of any non-speculative explanation for Younker's oversight is troubling.

Second, Lowe's lack of knowledge regarding the Order does not absolve prison officials of their responsibility to ensure that staff complied with the Order. Rather, supervisors

9

have a duty to take "all reasonable steps within their power to comply with the court's order" and must therefore "marshal their own resources, assert their high authority, and demand the results needed from subordinate persons and agencies in order to effectuate the course of action required by the [Court's order]." *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991). As the United States Court of Appeals for the Seventh Circuit has emphasized, "orders of the Court must be obeyed, and to absolve a large or small corporate defendant from its responsibilities simply because the corporation has ordered compliance but has not sufficiently policed same, would be to open the door for wholesale disobedience of the Court." *Shakman v. Democratic Org. of Cook Cty.*, 533 F.2d 344, 353, n.13 (7th Cir. 1976).

In short, case law and common sense alike make abundantly clear that it falls upon the supervisors of an institution to ensure that their subordinates are aware of a court order and comply with that order. In that regard, SCI Huntingdon's efforts at compliance were deficient. Those efforts were apparently limited to a single email to staff members that was not reviewed thoroughly enough by Younkers to ensure that all necessary staff members were copied on the email. It is also apparent that no one followed up on the email or checked to ensure that all relevant staff members received and understood the directives contained in the email. Given these failures and deficiencies, supervisors at SCI Huntingdon did not substantially comply with the Order, and the photocopying of Hill's legal mail on March 5, 2019, constitutes sanctionable conduct. *Cf. Lane Labs-USA, Inc.*, 624 F.3d at 589 ("In order to prove good faith substantial compliance, a party must demonstrate that it took all

reasonable steps within its power to comply with the court's order" (brackets and internal quotation marks omitted)).

Similarly, the March 19 Incident is sanctionable. As discussed previously, that Lowe was unaware of the Order in March 2019 is no defense to a finding of contempt. Moreover, although Motion Defendants have presented evidence that the mailing envelope was not clearly marked as originating from Barrett's office, Motion Defendants' "behavior need not be willful in order to contravene the [Order]." *Id.* at 582. Barrett's letter was sent using an envelope from the United States District Court for the Middle District of Pennsylvania's Office of the Clerk—as were all other mailings from Barrett—and this may well have alerted a reasonably diligent officer that he must proceed with caution in opening and photocopying the contents of that envelope. Unfortunately, because Lowe was never informed of the Order, he did not have the opportunity to exercise such caution. Therefore, although it is not clear that Lowe's violation of the Order was willful, sanctions are nonetheless warranted. Because sanctions are warranted, the only questions remaining are what sanctions to impose, and against whom to impose those sanctions.

*C. Appropriate Sanctions*

"Sanctions for civil contempt serve two purposes: to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience." *Marshak v. Treadwell*, 595 F.3d 478, 494 (3d Cir. 2009) (internal quotation

11

marks omitted). As noted previously, a nonparty may be sanctioned if he or she "abet[s] the defendants or [is] legally identified with him." *Quinter*, 676 F.2d at 973.

The Court concludes that responsibility for the violations of the Order falls broadly upon SCI Huntingdon's leadership and, thus, those in leadership bear responsibility for any sanctions—rather than lower-level employees such as Lowe. Kauffman—as Superintendent of SCI Huntingdon—has a clear responsibility to adequately oversee his employees. Moreover, the Order was sent to Kauffman's office, and Kauffman's assistant is responsible for reviewing all court orders. (Doc. 130; Evidentiary Hearing Tr. at 7-8). When the motion for sanctions was filed, Defense Counsel contacted the Superintendent's Assistant and forwarded the Order directly to her. (Evidentiary Hearing Tr. at 36-37). Given the significant involvement of Kauffman's office in ensuring compliance with the Order, he bears ultimate responsibility for the violations. Although Kauffman is not a party to this action, as the Superintendent charged with overseeing SCI Huntingdon and its staff, he is "legally identified with" the prison-official-defendants and may therefore be held responsible for the violations.

Turning to the appropriate sanction to impose, Captain Stevens testified that, as of April 2019, the relevant PA DOC policy changed such that privileged inmate mail is no longer photocopied. (Evidentiary Hearing Tr. at 15-16). Moreover, Barrett has informed the Court that mediation concluded unsuccessfully. (Doc. 145). Sanctions are therefore not required to coerce compliance with the Order, as prison officials will presumably no longer receive mail from Barrett directed to Hill, and presumably would not photocopy such mail even if it were

received. Furthermore, Hill is pursuing this motion *pro se*, and thus suffered no direct monetary damages in the form of attorney's fees. However, Hill must be compensated for the time and effort that he expended in bringing this matter to the Court's attention and litigating this motion, including by cross-examining witnesses at the evidentiary hearing. The Court finds that a sanction of $500.00 (five hundred dollars) is appropriate to compensate Hill for his time and energy.

## III. Conclusion

For the foregoing reasons, Hill's motion for sanctions for civil contempt (Doc. 132) will be granted. An appropriate order will follow.

BY THE COURT:

Robert D. Mariani
United States District Judge